# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| SHAUNREE BALLARD, | ) | |
| | ) | |
| *Plaintiff,* | ) | Case No: 16 C 977 |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| LOMARIA WATSON; Chicago Police Officer | ) | |
| DAVID A. BROWN; Chicago Police Officer | ) | |
| BRADLEY SCADUTO, Star #14620; | ) | |
| Chicago Police Officer FRANK HODGEMAN, | ) | |
| Star # 4829; and the CITY OF CHICAGO, | ) | |
| a municipal corporation, | ) | |
| | ) | |
| *Defendants.* | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Shaunree Ballard filed this § 1983 lawsuit after a fight between herself and Defendant Lomaria Watson led to criminal charges being brought against her. Ballard has sued Watson and the three Chicago police officers who were involved in her arrest (David Brown, Bradley Scaduto, and Frank Hodgeman). Watson has moved to dismiss all counts of the complaint against her (Counts I-VI) pursuant to Rule 12(b)(1) and Rule 12(b)(6), and two of the police officers (Scaduto and Hodgeman) have moved to dismiss two of the four counts against them (Counts VI and VII), pursuant to Rule 12(b)(6). The City of Chicago, which Ballard has sued under 745 ILCS 10/9-102 for indemnification of the police officer defendants, joins in the motion of Scaduto and Hodgeman. The Court now grants the motion of

Scaduto, Hodgeman, and the City of Chicago to dismiss Counts VI and VII. Moreover, although none of the defendants made the argument, the Court's dismissal of Counts VI and VII leads to the further conclusion that dismissal is required for (1) the remaining claims against the moving police officers, (2) all claims against the non-moving police officer,[1] and (3) all claims against Watson (but not for the reasons argued by Watson in her separate motion). In other words, the entire complaint must be dismissed, although, as discussed below, the dismissal will be without prejudice.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the Court's subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "The standard of review for a Rule 12(b)(1) motion to dismiss depends on the purpose of the motion." *Bolden v. Wells Fargo Bank, N.A.,* 2014 WL 6461690, at *2 (N.D. Ill. Nov. 18, 2014) (citing *Apex Digital, Inc. v. Sears, Roebuck & Co.,* 572 F.3d 440, 443-44 (7th Cir. 2009)). "If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction (a facial challenge), the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor." *Bolden,* 2014 WL 6461690, at *2 (citing *United Phosphorus, Ltd. v. Angus Chem. Co.,* 322 F.3d 942, 946 (7th Cir. 2003)). A factual

---

[1] The non-moving police officer (Brown) had not yet entered an appearance in the case when the other defendants filed their motions to dismiss. His attorney filed an appearance on June 7, 2016, but as of this writing he has neither moved to join in the other police officers' motion to dismiss nor filed his own separate motion. Nevertheless, the bases for dismissal discussed herein requires the dismissal of the claims against Brown as well.

challenge to the court's subject matter jurisdiction, on the other hand, is based on the assertion that "the complaint is formally sufficient but . . . there is *in fact* no subject matter jurisdiction." *United Phosphorus,* 322 F.3d at 946 (emphasis in original). When considering a factual challenge to the court's jurisdiction, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Evers v. Astrue,* 536 F.3d 651, 656–57 (7th Cir. 2008). "Where jurisdiction is in question, the party asserting a right to a federal forum has the burden of proof, regardless of who raised the jurisdictional challenge." *Craig v. Ontario Corp.,* 543 F.3d 872, 876 (7th Cir. 2008).

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel,* 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

## BACKGROUND

Accepting the factual allegations in the complaint as true, as the Court must, Watson was the one who initiated the fight with Ballard. At some point while the fight was on-going, Watson went to her home and retrieved a knife. She used the knife to stab Ballard in the head, left forearm, right clavicle, and left hand. Officers Scaduto and Hodgeman responded to the scene of the fight and initially placed Watson in handcuffs in their squad car while an ambulance transported Ballard to the hospital. Later, Officer Brown arrived on the scene and explained to Scaduto and Hodgeman that Watson was his girlfriend. Scaduto and Hodgeman then released Watson from custody, and conspired with Brown and Watson to prevent Ballard from pursuing criminal charges against Watson. After Ballard was discharged from the hospital, she was taken to the police station where she was charged with multiple criminal offenses. She was later found not guilty of all criminal charges.

## DISCUSSION

### A. THE POLICE OFFICER DEFENDANTS' MOTION TO DISMISS

Scaduto and Hodgeman move to dismiss two counts of the complaint: Count VI (Due Process Violation), and Count VII (Failure to Investigate). *See* R. 24.

#### 1. COUNT VI—EVIDENCE FABRICATION AND *BRADY* DUE PROCESS CLAIMS

Count VI of the complaint alleges a claim under the due process clause of the Fourteenth Amendment. "[V]iolations of due process are in most instances federal claims based on federal rights and are actionable under § 1983." *Armstrong v. Daily*, 786 F.3d 529, 542 (7th Cir. 2015). Ballard alleges that Scaduto and Hodgeman violated her due process rights when they: (1) "fabricat[ed] evidence about how the attack occurred," R. 1 at 7 (¶ 41), and (2) withheld from prosecutors material and exculpatory evidence about Brown's relationship with Watson, *id.,* in violation of *Brady v. Maryland*, 373 U.S. 83, 87-88 (1963). The Court will consider these alleged due process violations in turn.

##### a. EVIDENCE FABRICATION CLAIM

"Allegations of evidence fabrication may state a colorable due-process claim." *Bianchi v. McQueen,* 818 F.3d 309, 319 (7th Cir. 2016); *see Armstrong*, 786 F.3d at 551 (citing *Zahrey v. Coffey,* 221 F.3d 342, 349 (2d Cir. 2000) (defining the right at issue as "the right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity")). Moreover, "police officers who fabricate evidence [may be held] liable for the liberty deprivation that occurs later when the fabrication is used." *Whitlock v.*

*Brueggemann,* 682 F.3d 567, 583 (7th Cir. 2012). But such a claim exists only if the fabricated evidence is used to cause an infringement of the plaintiff's liberty interest. *Id.* at 580 ("We have consistently held that a police officer who manufactures false evidence against a criminal defendant violates due process *if* that evidence is later used to deprive the defendant of her liberty in some way.") (emphasis added). "Though the most common liberty deprivation cases are based on post-trial incarceration after a wrongful conviction, the essential elements of this constitutional claim are more general and not limited to wrongful convictions." *Armstrong,* 786 F.3d at 551; *see also id.* at 553 (cautioning against limiting due process claims "by a too-narrow requirement that the accused have been tried and convicted"). Nevertheless, "one of the necessary elements of a constitutional tort[ is] that the officer's act (fabrication) caused an injury." *Whitlock,* 682 F.3d at 582. "That is because a violation of the Fourteenth Amendment does not occur unless a person is 'deprive[d] . . . of life, liberty, or property, without due process of law.'" *Id.* (quoting U.S. Const. amend. XIV). As the Seventh Circuit has explained, "if an officer (or investigating prosecutor) fabricates evidence and puts that fabricated evidence in a drawer, making no further use of it, then the officer has not violated due process; the action did not cause an infringement of anyone's liberty." *Id.* (citation omitted).

The police officer defendants argue that Ballard has not alleged a deprivation of liberty because she acknowledges in her complaint that she was acquitted of all criminal charges. *See* R. 1 at 3 (¶ 17). They further argue that Ballard also did not

6

suffer any pre-trial deprivation of liberty because she was released on bail. The Seventh Circuit has said on multiple occasions that a criminal defendant who is released on bail and later acquitted at trial does not suffer a liberty deprivation for purposes of alleging a claim under the due process clause of the Fourteenth Amendment. *See Cairel v. Alderden,* 2016 WL 2641836, at *5 (7th Cir. May 5, 2016) (plaintiffs' evidence-fabrication due process claims foreclosed by the fact that plaintiffs "were quickly released on bond following their arrests"); *Bianchi*, 818 F.3d at 316, 320 (7th Cir. 2016) (plaintiffs "suffered no liberty deprivation . . . [and therefore] no due-process violation" because they "were arrested and immediately released on bond"); *Saunders-El v. Rohde*, 778 F.3d 556, 561 (7th Cir. 2015) ("Saunders-El, released on bond following his arrest and acquitted at trial, . . . cannot make out an evidence fabrication-based due process violation."); *Alexander v. McKinney*, 692 F.3d 553, 557 (7th Cir. 2012) (holding that the manufacturing of false evidence resulting in the plaintiff's arrest and charges being brought against him did not deprive him of a liberty interest because he was released on bond and later acquitted at trial).

To establish that Ballard was released on bail, the police officer defendants point outside the complaint to a document attached to their motion to dismiss, which appears to be from the criminal proceedings against Ballard. R. 24-1. Although the Court can take judicial notice of the state court record,[2] the document in question does not establish that Ballard was immediately released on bail. The

---

[2] *See Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir. 1994) (district court may properly consider public court documents in deciding a motion to dismiss).

7

most the Court can tell from the document is that the state court set bond about five days after the altercation between Ballard and Watson took place. The Court cannot say whether Ballard was in the hospital or in jail during those five days, whether Ballard was able to provide a bond on the same day as the state court set the bond, or, assuming Ballard did make bond, on what date that occurred and on what date she was actually released. Nevertheless, Ballard has not argued that the liberty deprivation she suffered was a pretrial incarceration, so the Court will treat her silence as a concession that she was not detained after her initial arrest and probable cause hearing. Ballard nonetheless alleges a deprivation of liberty in that, "[a]fter [she] was discharged from the hospital, she was taken to the 005th District Chicago Police Station and . . . charged with multiple criminal offenses." R. 1 at 3 (¶ 16). As Ballard further explains in her brief in opposition to the police officer defendants' motion to dismiss,

> [She] should never have been transported from the hospital to the Fifth District. The deprivation of [her] liberty lies within this time frame when she was placed into custody instead of being discharged from the hospital as a victim of a violent attack. . . . Thus, the fabrication of evidence by the Defendant Officers, acting in their investigative capacity, deprived the Plaintiff of her liberty because she went from the E.R. to the lock-up.

R. 30 at 5-6.

Ballard's argument for finding a due process violation arising out of her temporary detention incident to her arrest is an argument that has been explicitly rejected by the Seventh Circuit:

8

> The Fourth Amendment, not the due process clause, is the proper basis for challenging the lawfulness of an arrest. *See Albright v. Oliver*, 510 U.S. 266, 275, 114 S. Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion). Moreover, the Supreme Court has made it clear that a substantive due process claim may not be maintained where a specific constitutional provision protects the right at issue. *NASA v. Nelson*, ––– U.S. –––, 131 S. Ct. 746, 765, 178 L.Ed.2d 667 (2011), (Scalia, J., concurring in judgment) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (brackets omitted) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842, 118 S. Ct. 1708, 140 L.Ed.2d 1043 (1998)). Alexander cannot recast his untimely Fourth Amendment claim, thereby circumventing the statute of limitations, by combining it with a state law malicious prosecution claim and simply changing the label of the claim to substantive due process.

*Alexander*, 692 F.3d at 558; *see also McCann v. Mangialardi,* 337 F.3d 782, 786 (7th Cir. 2003) (holding that the plaintiff's argument that the defendant violated his due process rights by deliberately creating false evidence to procure his conviction was "nothing more than a recast of his Fourth Amendment false arrest claim . . . in the guise of a substantive (rather than procedural) due process violation"). In short, Ballard's allegation of a liberty deprivation stemming from her arrest may state a constitutional claim under the Fourth Amendment, but it does not give rise to a claim under the due process clause of the Fourteenth Amendment.

Ballard also mentions in passing that she suffered a liberty deprivation because, "[b]ut for the Defendants' evidence fabrication [she] would never have faced criminal charges." R. 30 at 5. This allegation suggests a slightly different due

9

process argument than the allegation concerning her arrest and transportation to the police station. Ballard cites *Haupt v. Dillard*, 17 F.3d 285 (9th Cir. 1994), in which the Ninth Circuit held that the plaintiff was denied his due process right to a fair trial after a police officer and deputy district attorney intimidated the trial judge into changing his jury instructions during the plaintiff's criminal trial. According to the *Haupt* court, the fact that the plaintiff was acquitted did "not erase all injury" from the constitutional violation. *Id.* at 287. Noting that the "right to a fair trial is a basic requirement of due process," the court held that the violation of the plaintiff's due process rights "was complete when the trial judge changed his jury instructions because of defendants' intimidation." *Id.* at 288 (quoting in support *Tumey v. Ohio*, 273 U.S. 510, 532 (1927) ("[E]very procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law."). In short, the court concluded, the plaintiff's acquittal spoke "only to the amount of damages," not whether the plaintiff "ha[d] a cause of action." *Haupt*, 17 F.3d at 287 (internal quotation marks and citation omitted).

*Haupt* is but one example of the varying approaches outside this circuit to the due process injury requirement. Another is *Cole v. Carson*, 802 F.3d 752, 765-73 (5th Cir. 2015). While *Cole* itself involved a pretrial detention in that the plaintiff had been held under house arrest pending his acquittal at trial, the Fifth Circuit's discussion of the plaintiff's claim of evidence fabrication did not depend on that detention. *See id.* at 766 ("Yet setting aside his time seized under house arrest,

Ryan still was framed and charged with a felony . . . ."). Although the *Cole* court recognized the principle, established by the Supreme Court in *Albright*, 510 U.S. at 268, that "there is no substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause," the court also stated that "*Albright's* reach is limited . . . [to] eschewing reliance upon substantive due process to create a *requirement* of probable cause to initiate a prosecution." *Cole*, 802 F.3d at 766 (internal quotation marks and citation omitted) (emphasis added). After an extensive analysis of case law from across the circuits, the *Cole* court concluded that, while there is no requirement of probable cause to initiate a prosecution, there may be a due process right to be free from the falsification of evidence to induce a prosecutor to initiate an unwarranted prosecution. In so concluding, the *Cole* court did not limit its holding to cases in which the plaintiff suffered some form of detention. Indeed, the *Cole* court expressly recognized other types of injuries that flowed from the fabrication of evidence leading to an unwarranted prosecution, including damage to the plaintiff's reputation, being required to mount a defense, and being placed "in the power of a court of law where he may be required to appear." *Id*. at 772. The *Cole* court also rejected the argument that these wrongs must be redressed if at all through a Fourth Amendment claim, stating that, although a Fourth Amendment challenge may in many cases address them, the listed injuries "do not disappear where there is no violation of that amendment." *Id*. Therefore, the court concluded, if the Fourth Amendment was not available to the plaintiff as a means to redress the wrongs

because, for instance, the arresting officers had probable cause to arrest the plaintiff (which was the case there), then, the court held, "the Fourteenth Amendment may offer protection." *Id.*

It is not clear whether arguments such as those accepted by the *Haupt* and *Cole* courts were considered but rejected by the Seventh Circuit in cases such as *Cairel, Bianchi, Saunders-El,* and *Alexander*, which only expressly discuss the absence of pre- or post-trial incarceration in concluding that the injury requirement for a constitutional violation had not been met. There is some language in other Seventh Circuit cases, however, that could be read to suggest that court might still be open to those arguments. *See Fields v. Wharrie,* 740 F.3d 1107, 1112 (7th Cir. 2014) ("the fabrication of evidence harmed the defendant before and not just during the trial, *because it was used to help indict him*") (emphasis added) (citing *Julian v. Hanna*, 732 F.3d 842, 847 (7th Cir. 2013) ("Julian would be able to recover for those torts [false arrest and false imprisonment] only the damages he sustained during the week or so that he was detained before being formally charged. Those damages would be only a fraction of the total damages attributable to his malicious prosecution, for those damages accumulated over the entire period that began with his arrest and ended only when the charges against him were dismissed—a period of 9 years and 3 months. Throughout this period, when he was not actually in prison he was (or so he alleges, and quite plausibly) tormented by fear of being imprisoned or re-imprisoned and unable to obtain employment.") (citations omitted)); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 281 (1993) (Scalia, J.,

concurring) ("the mere preparation of false evidence, *as opposed to its use in a fashion that* deprives someone of a fair trial *or otherwise harms him*, [does not] violate[ ] the Constitution") (emphasis added). Setting this language aside, however, the results in *Cairel, Bianchi, Saunders-El,* and *Alexander* strongly suggest to this Court that the Seventh Circuit does not consider any injury other than actual detention to be sufficient to give rise to a due process violation. In any event, Ballard has not fully explored this legal argument. Therefore, the Court declines to consider it further at this time.

Accordingly, Count VI's due process claim based on allegations of evidence fabrication will be dismissed without prejudice. Ballard may file an amended complaint within thirty days from the date of this opinion if she can allege facts giving rise to a valid due process claim, *i.e.,* a pretrial detention following her arrest, or if she has a good faith belief that she can plead a claim that her Fourth Amendment rights were violated because she was arrested without probable cause. *See Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). The Court does not express any opinion on whether Ballard may be able to allege a Fourth Amendment violation based on the facts as they are currently alleged in the complaint.

### b. *BRADY* CLAIM

The second part of Count VI describes a *Brady* due process claim. Ballard's theory is that defendants violated her due process rights by withholding the fact that Watson received special treatment because of her relationship with Brown, and

13

that, absent this misconduct, the prosecutor would not have pursued criminal charges against her. R. 1 at 7 (¶ 41). "A police officer's failure to disclose exculpatory evidence to a prosecutor may foreseeably result in a violation of the accused's due process rights under *Brady*." *Cairel*, 2016 WL 2641836, at *6. To prevail on a civil *Brady* claim against the police officer defendants, Ballard "must show that (1) the evidence is favorable to [her]; (2) the evidence was concealed by the officer[s]; and (3) the concealed evidence resulted in prejudice. Prejudice requires proof that the failure to disclose caused a deprivation of the accused's liberty." *Id.* (citations and footnotes omitted).

The exculpatory evidence in question—Watson's relationship to Brown—was favorable to Ballard and therefore satisfies the first requirement for a *Brady* claim. On the second element, the complaint alleges that the police officer defendants withheld this information from the prosecutor. But concealment from the prosecutor is not enough. Ballard also must show that the evidence "*was not otherwise available to [her] through the exercise of reasonable diligence.*" *Carvajal v. Dominguez*, 542 F.3d 561, 567 (7th Cir. 2008) (emphasis added). The Court cannot say from the pleadings whether Watson's relationship to Brown was unknown *to Ballard* and "not otherwise available" to her "through the exercise of reasonable diligence." But for purposes of the police officer defendants' motion to dismiss, the Court will assume that to have been the case. Even so, Ballard's *Brady* due process claim does not satisfy the third requirement for the same reason applicable to her evidence fabrication due process claim—Ballard has not alleged a deprivation of

14

liberty separate from the liberty deprivation that occurred in connection with her arrest. *See Cairel,* 2016 WL 2641836, at *6-7 (holding that the plaintiffs' civil *Brady* claims fail because plaintiffs could not demonstrate a deprivation of liberty as a result of any alleged failure to disclose the alibi evidence).

Ballard argues that the Court should not reach this issue because the police officer defendants failed to argue for dismissal of the *Brady* aspect to her Count VI due process claim. *See* R. 30 at 3 n.1. The Court agrees with Ballard that the police officer defendants appear to limit their argument regarding Count VI to the fabrication of evidence issue. Moreover, the police officer defendants had the opportunity in their reply brief, which they failed to take, to rebut Ballard's statement in her brief that the police officer defendants do not seek dismissal on the *Brady* due process claim. The police officer defendants' silence suggests to the Court that Ballard is correct regarding the police officer defendants' intention not to challenge Ballard's *Brady* due process claim. Nevertheless, the argument made by the police officer defendants for why Count VI should be dismissed applies just as equally to Ballard's *Brady* allegations as it does to her evidence fabrication allegations, *i.e.,* lack of an allegation of a relevant liberty deprivation. The Court therefore will dismiss Ballard's *Brady* due process claim for the same reasons given for dismissal of Ballard's fabrication of evidence due process claim. Like the fabrication of evidence due process claim, the dismissal will be without prejudice.[3]

---

[3] Although Ballard may be able to replead her evidence fabrication claim as a Fourth Amendment violation, it seems unlikely that Ballard will be able to replead her evidence withholding claim as a Fourth Amendment violation. Moreover, the

15

## 2. COUNT VII—FAILURE TO INVESTIGATE CLAIM

Count VII alleges that the police officer defendants violated their duty to conduct a legitimate investigation into Watson's attack on Ballard. The complaint does not explain the source of this duty. However, in her brief, Ballard cites to this Court's opinion in *Evans v. Gasca*, 2016 WL 1407695 (N.D. Ill. Apr. 11, 2016). The source of the duty to investigate discussed in *Evans* is the Fourth Amendment right to be free from arrest without probable cause. *Id.* at *7 (the rule of no further duty to investigate arises only because of a reasonable conclusion of probable cause to arrest based on information already known to the officer). Ballard does not allege a Fourth Amendment claim that she was arrested without probable cause. Because Ballard has failed to allege a constitutional basis for her failure to investigate claim, Count VII will be dismissed. The Court's dismissal of Ballard's failure to investigate claim based on a failure to plead a Fourth Amendment violation means that the

---

Seventh Circuit has stated that it is "'doubtful that an acquitted defendant can ever establish the requisite prejudice for a *Brady* claim.'" *Bianchi*, 818 F.3d at 320 (quoting *Carvajal*, 542 F.3d at 570). While *Alexander*, 692 F.3d at 556, notes that the case law from this circuit "entertain[s] the possibility that prejudice could be established if an acquitted defendant showed that disclosure of the suppressed evidence would have altered the decision to go to trial," other case law states that crediting this language from *Alexander* does not help the plaintiff because it establishes that even if there is a *Brady* claim, the claim is not clearly established law and therefore would be foreclosed on qualified immunity grounds. *See Bianchi v. McQueen*, 2014 WL 700628, at *12 (N.D. Ill., Feb. 24, 2014), *aff'd*, 818 F.3d at 320 ("no *Brady* violation occurred because the plaintiffs suffered no prejudice," and "[q]ualified immunity bars this claim too").

Court need not address the police officer defendants' alternative argument that they are entitled to qualified immunity on Ballard's failure to investigate claim.[4]

### 3. REMAINING COUNTS

The moving police officers do not argue for dismissal of the two remaining claims against them: (1) Count V—Section 1983 Conspiracy; and (2) Count IV—Malicious Prosecution. Nevertheless, because Ballard's due process and failure to investigate claims are dismissed, both the conspiracy claim and the state law malicious prosecution claim also must be dismissed.

First, a § 1983 conspiracy claim cannot stand without an underlying § 1983 violation. *See Boothe v. Sherman,* 66 F. Supp. 3d 1069, 1077 (N.D. Ill. 2014) ("Defendants cannot be held liable under § 1983 for *conspiring* to violate K.C.'s due process rights unless they *actually* violated her due process rights[.]" (emphasis in original) (citing *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982) ("Section 1983 does not, however, punish conspiracy; an actual denial of a civil right is necessary before a cause of action arises.")). After dismissal of Counts VI and VII, the complaint is left with no underlying § 1983 claim. Therefore, Count V, the § 1983 conspiracy claim, will be dismissed without prejudice.

Second, "if all the federal claims are dismissed, the pendent state claims should be dismissed as well." *Goldschmidt,* 686 F.2d at 585 (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Therefore, because the Court is

---

[4] The Court cannot at this time evaluate the qualified immunity issue in any event because Ballard has not explained the legal basis for her failure to investigate claim.

dismissing Counts V, VI, and VII, Ballard's state law claim against the police officer defendants for malicious prosecution will be dismissed without prejudice. If Ballard files an amended complaint repleading her federal claims, she may replead her malicious prosecution claim as well.[5]

## B. WATSON'S MOTION TO DISMISS

Watson is named as a defendant under Counts I through IV (state law claims for assault and battery, intentional infliction of emotional distress, negligence, and malicious prosecution), and under Counts V through VII (federal claims under § 1983 for conspiracy and due process violation). Watson moves to dismiss the state law counts for lack of supplemental jurisdiction under 28 U.S.C. § 1343, the federal law conspiracy count for failure to plead facts sufficient to show a conspiracy, and the due process claim for failure to plausibly allege Watson's willful participation in joint activity with the defendant police officers to deprive Ballard of her constitutional rights. The Court need not address Watson's arguments for dismissal, however. The federal claims against Watson are dismissed without prejudice for the same reasons that the Court dismisses Counts V through VII against the police officer defendants. Further, the state law claims against Watson are dismissed without prejudice for the same reason that the Court dismisses the malicious prosecution count against the police officer defendants. Should Ballard

---

[5] As noted in the next section, Watson argued in her separate motion to dismiss that the Court does not have supplemental jurisdiction over the pendent state law claims even if the federal claims were to go forward. That argument is not likely to be persuasive, *see, e.g., Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008), although the Court need not decide the issue at this time because of its dismissal of the pendent state law claims for lack of any viable federal claims as currently pled.

file an amended complaint, she may replead her federal and state law claims against Watson as well, and Watson will have an opportunity to raise her arguments for dismissal at that time.

## CONCLUSION

For the foregoing reasons, the police officer defendants' partial motion to dismiss, R. 24, is granted. Defendant Watson's motion to dismiss, R. 10, is denied without prejudice as moot. Further, all counts of the complaint as to all defendants are dismissed without prejudice. Plaintiff may file an amended complaint within thirty days of entry of this opinion. If Plaintiff does not timely file an amended complaint, the Court's dismissal of her federal claims will become a final ruling dismissing those claims on the merits, while the Court's dismissal of her state law claims will become a final ruling dismissing those claims on jurisdictional grounds, *i.e.*, without prejudice.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: June 17, 2016